Kahler Estate

*H. B. Smith*, for petitioner.

*Frank C. Elmes*, contra.

KREISHER, P. J., October 17, 1955.—Petitioner in this case, H. Russell Kahler, married the deceased, Sarah J. Lewis Kahler, in 1921, and they resided together in the town of Bloomsburg as husband and wife until decedent's death February 10, 1954. Both of the parties had been previously married with established households, and upon their marriage they consolidated some of their household goods, made public sale of the balance and purchased new household furnishings. Petitioner was a salesman for the Atlantic Refining Company for more than 40 years and is now retired. The deceased had an independent income from property she inherited from her first husband, a portion of which was commingled with the income of the surviving husband, and the combined incomes were used for the support and maintenance and general household expenses of the respective parties.

On February 15, 1954, the Register of Wills of Columbia County issued letters testamentary to Mae G. Smethers, respondent herein, who was named the executrix in decedent's will, and who is a niece of the testatrix. On May 4, 1954, the said executrix filed an inventory and appraisement of the personal estate of decedent in the total amount of $7,153.49. Said inventory and appraisement sets forth stocks, bonds, savings account, checking account and rent due the decedent's estate in the sum of $6,518.50. The balance of the appraisement is made up of the furniture and fixtures found in the home at 206 West Fourth Street, Bloomsburg, where the deceased and petitioner were residing on the date of death.

On June 1, 1954, the surviving husband filed a petition for citation on the executrix to file a supplemental inventory, setting forth the foregoing facts, and in paragraph four of the petition the following:

"That Mae G. Smethers, Executrix, failed to include in said inventory as assets of decedent's estate certain property which was in decedent's possession at or about the time of her death, namely, one diamond engagement ring of the approximate value of $400.00, one diamond cluster dinner ring of the approximate value of $185.00, and cash in the amount of $92.00. . . ."

Paragraph five of the petition alleges that the executrix improperly inventoried as assets of decedent's estate the household furnishings which were held as tenants by the entireties, and which vested absolutely in petitioner upon the death of his wife, with the exception of one chest of drawers in the storage room valued at $10, one table in the second living room valued at $5, two lamps in the same room valued at $2 and one table in the kitchen valued at $1.

On July 12th the executrix filed an answer to the said petition admitting the first three paragraphs and denying the fourth and fifth paragraphs above mentioned, and setting forth in paragraph six under the heading of "new matter" that petitioner unlawfully caused a locked chest of drawers belonging to decedent to be opened and removed therefrom certain documentary evidence referring to the ownership of the household goods. On July 13th petitioner filed a reply to the alleged new matter, admitting that he obtained the services of a locksmith to unlock the chest of drawers merely for the purpose of examination, and that nothing was removed therefrom by him and all of the contents of the chest were delivered to the executrix.

The parties appeared in open court on July 23rd and 27th and testified in support of their allegations

contained in the pleadings. At the termination of the hearing the court directed that the testimony be transcribed and filed, that the matter be placed on the argument list and counsel be given the opportunity to argue the matter orally and supply the court with written briefs. On September 17, 1955, the testimony was filed and counsel notified thereof, after which time counsel appeared in open court stating they did not desire to place the matter on the argument list nor did they desire to submit briefs to the court and requested that the matter be disposed of by the court.

It will be noted that the petition was filed subsequent to the Superior Court opinion by Wright, J., in Kevra Estate, April 15, 1953, 173 Pa. Superior Ct. 229, wherein it is stated on page 232:

"The filing of exceptions to an inventory and appraisement has no statutory basis. A petition for citation to file a supplemental inventory would have been good practice: Leadenham's Estate, 289 Pa. 216."

However, the Supreme Court of Pennsylvania on November 15, 1954, in Rogers Estate, 379 Pa. 494, in an opinion by Mr. Justice Allen M. Stearne, on page 495 of the opinion, states the following:

"In the settlement of a decedent's estate disputed title to property should not be determined upon exceptions to an inventory and appraisement which happens not to include the property claimed on behalf of the estate. The function and object of an inventory and appraisement in a decedent's estate is to fix *presumptively* the existence of property in the possession of the fiduciary and the value thereof. This is only *prima facie* evidence of ownership and value. Such listing does not affect the true ownership and value: [citations]. The question of ownership is of interest to creditors, federal and state taxing authorities, and others. Such title, therefore, should not be finally

determined until after an audit, with due statutory notice, and the determination by the orphans' court whether or not a substantial issue of fact exists. It is true that in Leadenham's Estate, 289 Pa. 216, . . . a citation on the fiduciary to file a supplemental inventory embracing the disputed property was impliedly approved as a procedure for determining the question of title. Nonetheless, the proper procedure is as we have hereinabove indicated and is, therefore, to be followed.

"The executor, appellant, should be required to file an account. At the audit a claim for surcharge may then be presented against the fiduciary for the amount of money which belonged to decedent at the time of her decease and alleged to be in his posssssion."

It, therefore, appears to this court that in view of the procedure announced in Rogers Estate by the Supreme Court of Pennsylvania that this court cannot at this time adjudicate title to the items set forth in paragraph four of the petition above quoted. We here note that counsel for petitioner at the time of hearing abandoned the claim with respect to cash in the amount of $92, because petitioner was unable to offer any testimony in regard thereto. There was considerable testimony given by all the parties in respect to the two diamond rings, the remaining property mentioned in paragraph four, but from the foregoing, we are satisfied that this court cannot at this time determine title to these items.

It is true that the Orphans' Court Act of August 10, 1951, P. L. 1163, art. III, sec. 301, 20 PS §2080.301, subsection (13) provides: "The orphans' court shall have exclusive jurisdiction of: . . . (13) Title to Personal Property. The adjudication of the title to personal property in the possession of the personal representative, or registered in the name of the decedent or his nominee, or alleged by the personal repre-

sentative to have been in the possession of the decedent at the time of his death."

And the Fiduciaries Act of April 18, 1949, P. L. 512, art. IV, sec. 403, 20 PS §320.403, provides: "Whenever any property not included in the inventory and appraisement comes to the knowledge of the personal representative, he shall file, within thirty days of its discovery, a supplemental inventory and appraisement thereof with the register."

And section 404 of the same act provides: "The appointment of a personal representative shall not operate as a discharge or bequest of any debt which he owes the decedent or of any claim which the decedent had against him, but any such debt or claim, if it survives, shall be included in the inventory."

However, both of these statutes were in full force and effect when the Supreme Court handed·down its opinion in the Rogers Estate, and since we conclude that we are bound by the procedure set forth in that estate, we do not deem it necessary to analyze the above quoted statutes in regard to the diamond rings set forth in paragraph four of the petition. It, therefore, appears that petitioner's right to have this matter adjudicated will arise after the executrix files her account and upon exceptions to the account, the appointment of an auditor to pass upon the claims of the parties and make distribution of the estate and surcharge the personal representative, if such is found to be the law and the facts. It follows that the prayer of the petition with respect to the items set forth in paragraph four thereof must be denied.

In regard to the items of household goods set forth in paragraph five of the petition, it is the court's opinion that the court should at this time dispose of the conflicting claims, because it is an entirely different proposition. The first distinction is that the personal representative has included these items in the inven-

tory and appraisement, and, therefore, the value thereof would be subject to inheritance tax, and if they are improperly in the estate, the estate should not pay inheritance tax on these items. The second distinction is that, since these items are included in the inventory and appraisement, in order for the personal representative to liquidate the estate and file an account, it would be necessary to make public sale of the items, and if they are improperly included in decedent's estate, then the personal representative should not take possession of the items, nor should she dispose of them because if such action were taken it might be very difficult for the aggrieved party to get proper redress before an auditor, because we are all well familiar with the general fact that at public sale many household items are sold at sacrifice prices, and the owner thereof would not be able to replace them for the price received at a public sale even though he might recover that sum as an item of surcharge before an auditor.

The testimony in regard to these items, in addition to what we have already stated, rather clearly indicates that petitioner and deceased lived together as man and wife in comparatively happy marital bliss for more than 30 years. An examination of the bank deposits which were offered into evidence indicates that petitioner did contribute a considerable portion of his earnings to the running of the house and purchase of the household furnishings. Unquestionably petitioner and the deceased used these items as common property for the benefit of both, and the money of both parties was used to purchase them. Under the facts as found in the testimony, it is clear that a very strong presumption arises in favor of the surviving spouse with respect to household goods that were used in common up until the date of death of the one spouse. There are many cases reported on this

subject, and to refer to just one which we think covers the issue is the case written by Ladner, J., a well-recognized auditing judge of Philadelphia County, who later sat on the appellate bench, and in McCarter's Estate, reported in 36 D. & C. 625, on page 627, it is stated:

"In this case there was no exclusive possession of decedent at the time of his death, the property was in the joint possession of the husband and wife living together, and I take it that if any inference is to be drawn from this fact alone it would be that the furniture so possessed was intended for the use and benefit of both, and in the absence of proof to the contrary a fair presumption arises that title was in *both* husband and wife. Such title would be by entireties, for personal property may be so held: Bramberry's Estate, 156 Pa. 628. Unless title in both husband and wife is expressly shown to be otherwise, it will be presumed to be held as tenants by entireties: Vandergrift's Estate, 105 Pa. Superior Ct. 293, . . . This being so, title thereto became absolute in the widow upon the death of her husband."

The testimony of petitioner clearly shows that the household goods were purchased by money of both parties, were used in common by both parties and that they were living together as husband and wife at the date of death, and respondent in our opinion has failed to overcome the presumption that these household goods were held as tenants by the entireties, which requires clear, strong and unmistakable evidence, and no such evidence was produced before the court. It, therefore, follows that in our opinion the items of household furniture as set forth in the inventory and appraisement, with the exception of that mentioned in paragraph five of the petition, was improperly included in the inventory and appraisement and, accordingly, should be deleted therefrom.

In the storage room it appears that there was found some old coins and cash inventoried and appraised at the value of $60.49, and the tables, chest and lamps mentioned in paragraph five were inventoried and appraised at the value of $18, making a total of $78.49, which we find to be properly included in the appraisement.

The total of all of the household contents was appraised at $634.99, and subtracting from this amount the old coins, cash and items mentioned in paragraph five of $78.49, leaves a balance of $556.50 appraised value of household contents improperly included in the inventory and appraisement, which in our opinion became the absolute property of the surviving husband upon the death of his wife. Reducing the total amount of the inventory and appraisement of $7,153.49 by the amount of the appraised value of the household goods improperly included in the amount of $556.50, makes the total amount of the inventory and appraisement $6,596.99 instead of $7,153.49.

## Order of Court

And now, to wit, October 17, 1955, the citation awarded directing Mae G. Smethers, executrix of the will of Sarah J. Lewis Kahler, deceased, to show cause why she should not file a supplemental inventory and appraisement including two diamond rings and $92 in cash as assets of decedent's estate is dismissed and discharged.

It is further ordered that the citation awarded directed to Mae G. Smethers, executrix of the will of Sarah J. Lewis Kahler, deceased, to show cause why the articles of household goods held as tenants by the entireties should not be deleted from the inventory and appraisement as filed is hereby made absolute, and it is accordingly adjudged and decreed that the household contents set forth in the inventory and

appraisement are stricken and deleted therefrom in the amount of $556.50; that there shall remain in the inventory and appraisement as contents of the storage room one chest of drawers, $10; old coins, $6; cash, $54.49; in the second living room one table, $5; two lamps, $2, and in the kitchen, one table, $1, thereby reducing the total inventory and appraisement of personal property from $7,153.49 to $6,596.99.

It is further ordered and decreed that the costs of these proceedings shall be paid as costs of administration of said estate.

And now, to wit, October 17, 1955, upon motion of H. B. Smith, Esquire, attorney for petitioner, and on motion of Frank C. Elmes, Esquire, attorney for respondent, an exception noted and bill sealed on behalf of both parties.